UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NORMA ROBINSON and AUDLEY STEWART,

                Plaintiffs,

  -against-

RESOURCE PETROLEUM &
PETROCHEMICALS INTERNATIONAL, INC.,
DAUNETTE LEE, and DAMON LEE,

                Defendants.
----------------------------------------------------------------X

REPORT AND
RECOMMENDATION
22 CV 1284 (LDH)(RML)

LEVY, United States Magistrate Judge:

       By order dated January 9, 2024, the Honorable LaShann DeArcy Hall, United States District Judge, referred plaintiffs' motion for default judgment to me for Report and Recommendation. For the reasons stated below, I respectfully recommend that the motion for default judgment be denied. I further recommend that plaintiffs' claims be dismissed for lack of jurisdiction and that plaintiffs be granted thirty days to file objections.

## BACKGROUND AND FACTS

       Plaintiffs pro se Norma Robinson and Audley Stewart ("plaintiffs") commenced this action on March 9, 2022, against defendants Resource Petroleum and Petrochemical International, Inc. ("Resource Petroleum" or the "corporate defendant"), Daunette Lee, and Damon Lee (the "individual defendants" or collectively with the corporate defendant, "defendants") asserting claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Exchange Act"); Section 5 of the Securities Act of 1933, 15 U.S.C. §§ 77e(a)

and 77e(c) ("Securities Act");[1] and New York State common law for fraud. (Second Amended Complaint, dated Dec. 22, 2022 ("SAC"), Dkt. No. 33.) Plaintiffs are residents of Jamaica, New York. (Id. ¶¶ 4, 5.) Resource Petroleum is a Nevada domestic corporation and is registered in the State of New York as an active foreign corporation. (Id. ¶¶ 6, 44.)[2] The corporate defendant's "current registered address in New York is Bridge Plaza, 41-04 10th Street, Suite 6A, Long Island City NY 11101." (Id. ¶ 6.)

Plaintiffs allege that, beginning in or about December 2008, the individual defendants made fraudulent representations to plaintiffs regarding Resource Petroleum related to the work and financial status of the corporation in order to induce plaintiffs to give money to the individual defendants. (Id. ¶ 9.) Plaintiffs assert that the individual defendants told them that they were selling shares in Resource Petroleum, that the investment would be "extremely safe," and that the company would "protect" plaintiffs from any losses. (Id. ¶ 11.) Plaintiff Stewart met with defendant Daunette Lee in person on two occasions and spoke with her on the

---

[1] Plaintiffs purport to bring a claim under Regulation D of the Securities Act of 1933, 17 C.F.R. §§ 230.500, et seq. (See Second Amended Complaint, dated Dec. 22, 2022, Dkt. No. 33, at 11.) Section 5 of the Securities Act prohibits "any person" from directly or indirectly using the mails or the means of interstate commerce to offer or sell a security unless it is registered with the SEC or is exempt from registration. 15 U.S.C. §§ 77e(a), (c). If a registration exemption is claimed, the claimant bears the burden of proving the exemption. SEC v. Ralston Purina Co., 346 U.S. 119, 126 (1953); Byrnes v. Faulkner, Dawkins & Sullivan, 550 F.2d 1303, 1311 (2d Cir. 1977). Regulation D is an exemption to the requirements of Section 5 of the Securities Act, and defendants would have the burden of demonstrating that it applied to their offering. See Underwood v. Coinbase Glob., Inc., 654 F. Supp. 3d 224, 234 (S.D.N.Y. 2023), aff'd in part, rev'd in part and remanded sub nom. Oberlander v. Coinbase Glob. Inc., No. 23 CV 184, 2024 WL 1478773 (2d Cir. Apr. 5, 2024) ("If the plaintiff meets this *prima facie* burden [of a Section 5 claim], the burden shifts to the defendant to show that an exception applies."). Therefore, the court construes plaintiffs' claim to be brought under Section 5 instead of Regulation D.

[2] Plaintiffs do not allege the individual defendants' citizenship. However, the Answer filed by the individual defendants designates their address as 3 Columbus Circle, New York, New York. (See Answer, dated May 19, 2022, Dkt. No. 11.)

telephone several times regarding plaintiffs' potential investment in Resource Petroleum. (Id. ¶ 12.) During those conversations, plaintiffs allege that defendant Daunette Lee told plaintiff Stewart that the return on an investment of $25,000 would be approximately $300,000 over eight years and that defendants "were all 'legitimate.'" (Id.) Defendants allegedly repeated the same assurances to plaintiff Robinson. (Id. ¶ 13.)

        Based on defendants' representations, plaintiffs signed a subscription agreement for the purchase of 10,000 shares of Resource Petroleum at the price of $2.50 per share. (Id. ¶ 14; see also Subscription Agreement, dated Dec. 24, 2008, attached as Ex. A to the SAC, Dkt. No. 33.) In accordance with the individual defendants' instructions, plaintiffs transferred $25,000 to a bank account that they were told belonged to Resource Petroleum in exchange for 10,000 units of common stock of Resource Petroleum. (SAC ¶ 16.) Defendants provided plaintiffs with a "stock certificate" dated December 24, 2008, indicating plaintiffs' ownership of 10,000 units of common stock of Resource Petroleum. (Id. ¶ 17; see also Stock Certificate, dated Dec. 24, 2008, attached as Ex. B to the SAC, Dkt. No. 33.) The stock certificate was signed by defendant Daunette Lee as "Secretary" and defendant Damon Lee as "Chairman" of Resource Petroleum. (SAC ¶ 17.)

        Plaintiffs then invested an additional $2,500 in Resource Petroleum after the individual defendants contacted them after their initial investment and suggested that they do so. (Id. ¶ 19.) Plaintiffs were provided with a stock certificate signed by defendants reflecting plaintiffs' ownership of 1,000 units of common stock of Resource Petroleum. (Id. ¶ 20; see also Second Stock Certificate, dated June 8, 2009, attached as Ex. D to the SAC, Dkt. No. 33.) Plaintiffs allege that shortly after they transferred $27,500 to defendants, the funds were moved to the personal bank account of defendant Daunette Lee. (SAC ¶ 22.) In June 2009, plaintiffs

3

attended a presentation given by Resource Petroleum and were given a brochure that included information about Resource Petroleum and its projects. (See id. ¶¶ 23-28.) Following the presentation, plaintiffs did not hear from defendants for several years despite making many attempts to locate them. (Id. ¶ 29.)

In October 2011, Resource Petroleum filed Form D – Notice of Exempt Offering of Securities ("Form D") with the United States Securities and Exchange Commission ("SEC"), designating defendant Damon Lee as the President and CEO of Resource Petroleum and defendant Daunette Lee as Vice President of the corporation. (Id. ¶¶ 30, 31.) That same document indicated that from "2004 to 2010 the Issuer issued $50,818,500 in stock to friend and family; and as consideration for obtaining engineering and other services, to obtain a license to construct a [] refinery; acceptable to contractors, and to make the project bankable." (Id. ¶ 31.) The form also stated that the minimum investment in Resource Petroleum to be accepted from any outside investor was $5,000,000. (Id. ¶ 32.) The form did not indicate that shares of Resource Petroleum had been sold for $27,500 with a unit price of $2.50 in 2009. (Id. ¶ 33.) In March 2012, plaintiff Robinson contacted the SEC and communicated her concerns about Resource Petroleum. (Id. ¶ 34.) In 2020, plaintiffs contacted the Queens County Office of the District Attorney ("Queens D.A.") regarding their concerns that defendants had defrauded them. (Id. ¶ 35.) Plaintiffs allege that after the Queens D.A. investigated defendants, defendant Daunette Lee informed them that she would "restore" plaintiffs' shares of Resource Petroleum and proposed a "fee agreement of $5,000 per month starting 30 August 2021." (Id. ¶¶ 37, 38.) No payments have been made by defendants to plaintiffs pursuant to this proposal. (Id. ¶ 38.) Plaintiffs now seek compensatory and punitive damages along with costs and fees related to their claims.

Resource Petroleum was properly served with the Second Amended Summons and Complaint.  (See Affidavit of Service of Sean Warner, sworn to Jan. 13, 2023, Dkt. No. 36.)  The corporate defendant has failed to answer or otherwise move with respect to the complaint.  Plaintiffs moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) on September 8, 2023.  (See Request for Certificate of Default, dated Sept. 8, 2023, Dkt. No. 44.)  On September 14, 2023, the Clerk of the Court noted the corporate defendant's default.  (See Clerk's Entry of Default, dated Sept. 14, 2023, Dkt. No. 45.)  On December 18, 2023, plaintiffs moved for default judgment against the corporate defendant.  (See Motion for Default Judgment, filed Dec. 18, 2023, Dkt. No. 49.)  Judge DeArcy Hall referred plaintiffs' motion to me on January 9, 2024.  (See Order, dated Jan. 9, 2024.)

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for plaintiffs to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a).  Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on plaintiffs' motion, enter a default judgment.  FED. R. CIV. P. 55(b)(2).  To grant a default judgment, the court must ensure that the plaintiffs took all the required steps in moving for default judgment, including providing proper notice to defendant of the lawsuit.  Here, as explained above, plaintiffs have demonstrated that they properly served the corporate defendant with the Second Amended Summons and Complaint.

Plaintiffs have not demonstrated that they served the Motion for Default Judgment and accompanying submissions on the corporate defendant in compliance with Local Rule 55.2(c). Local Civil Rule 55.2(c) requires that "all papers submitted to the Court pursuant to Local Civil Rule [55.2(b)] shall simultaneously be mailed to the party against whom a default judgment is sought at . . . the last known business address of such party[.] Proof of such mailing shall be filed with the Court." Loc. Civ. R. 55.2(c). Nevertheless, the circumstances of this case justify the failure to properly mail the motion pursuant to Rule 55.2(c). First, plaintiffs should be granted some leniency due to their pro se status. Dallio v. Hebert, 678 F. Supp. 2d 35, 55 (N.D.N.Y. 2009) (". . . special leniency may somewhat loosen the procedural rules governing the form of pleadings [for pro se litigants]"); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191 (2d Cir. 2008) ("This obligation [to construe the pleadings of pro se litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings."); Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") (citation omitted).[3]

---

[3] Plaintiffs also failed to include a memorandum of law with the motion for default judgment. "Local Civil Rule 7.1 requires that all motion papers include 1) a notice of motion; 2) [a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined; and 3) supporting affidavits and exhibits thereto containing necessary factual information." Sarwar v. James Motel, Inc., No. 21 CV 27, 2022 WL 21817103, at *4 (E.D.N.Y. June 6, 2022) (citing Loc. Civ. R. 7.1) (internal quotation marks omitted). However, plaintiffs included an affidavit along with the motion for default judgment and attached various exhibits to the Second Amended Complaint. Because of plaintiffs' pro se status, the court will rely on the information included in the Second Amended Complaint to determine the corporate defendant's liability as a result of its default.

Second, the corporate defendant has actual notice of the motion and the relief sought against it. Plaintiffs served the motion and its accompanying submissions on the individual defendants. (See Certificate of Service, dated Dec. 26, 2023, Dkt. No. 50-1.) As previously mentioned, the individual defendants are listed as the CEO, President, and Vice President of the corporate defendant on Form D. (SAC ¶¶ 30, 31.) Furthermore, the individual defendants have been personally warned multiple times that if an attorney failed to file a notice of appearance for the corporate defendant it would be found in default. (See, e.g., Minute Entry, dated Nov. 29, 2022; Order, dated Mar. 3, 2024.) Therefore, I find that the circumstances of this case justify the failure to properly mail the motion papers to the corporate defendant pursuant to Rule 55.2. See Guanglei Jiao v. Shang Shang Qian Inc., No. 18 CV 5624, 2020 WL 6370148, at *7 (E.D.N.Y. Aug. 11, 2020), report and recommendation adopted, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (excusing strict compliance with Local Civil Rule 55.2(c) where the defendants were aware of the relief sought against them).

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Moreover, "[a] corporate defendant's failure to comply with a court's order that the defendant obtain counsel constitutes failure to 'otherwise defend' for the purpose of Rule 55(a) such that an entry of default is justified." Colonial Sur. Co. v. William G. Prophy LLC, No. 22 CV 1730, 2023 WL 7338784, at *5 (E.D.N.Y. Nov. 7, 2023) (quoting Leviton Mfg. Co. v. Fastmac Performance Upgrades, Inc., No. 13 CV 1629, 2013 WL 4780045, at *2 (S.D.N.Y. July 8, 2013) (citing Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2d Cir. 2006))); see also Amusement Indus., Inc. v. Stern, No. 07 CV 11586, 2016 WL 7016855, at *1 (S.D.N.Y. Nov. 30, 2016), report and recommendation adopted, 2017

7

WL 57851 (S.D.N.Y. Jan. 4, 2017), aff'd, 721 F. App'x 9 (2d Cir. 2018) ("It is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55, F[ed]. R. Civ. P."); Glob. Auto, Inc. v. Hitrinov, No. 13 CV 2479, 2015 WL 5793383, at *7 (E.D.N.Y. Sept. 30, 2015) ("Since a corporation's failure to retain counsel results in a failure to 'otherwise defend,' it is appropriate to enter a default against a corporation which has failed to comply with a court order to retain counsel.").

Here, the corporate defendant has remained unrepresented by counsel since this case was commenced despite numerous warnings that the failure to obtain counsel would result in a finding of default. Therefore, the corporate defendant is in default. A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. See FED. R. CIV. P. 8(b)(6); Gesualdi v. Specialty Flooring Sys., Inc., No. 11 CV 5937, 2014 WL 2208195, at *2 (E.D.N.Y. May 28, 2014). Nevertheless, the court must assess whether plaintiffs' well-pleaded factual allegations establish the corporate defendant's liability as a matter of law. See La Saltena S.A.U. v. Ercomar Imports Internacional Corp., No. 21 CV 4675, 2024 WL 2319622, at *6 (E.D.N.Y. May 22, 2024).[4]

---

[4] Additionally, "federal courts must ensure that they do not *lack* subject-matter jurisdiction, even if the parties fail to identify any jurisdictional defect . . . ." Behrens v. JPMorgan Chase Bank, N.A., 96 F.4th 202, 206007 (2d Cir. 2024) (emphasis in original); see also FED. R. CIV. P. 12(h)(3) (a district court "must" dismiss an action whenever it determines that it "lacks subject-matter jurisdiction."); Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011) ("federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction . . . .").

8

I. <u>Exchange and Securities Acts</u>

Plaintiffs' first and second claims against defendants for securities fraud are brought under the Exchange and Securities Acts. Under the Exchange Act,

> [i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j. The Securities Act prohibits any person from directly or indirectly selling a security in interstate commerce unless it is registered with the SEC or is exempt from registration. 15 U.S.C. §§ 77e(a), (c).

28 U.S.C. § 1658 provides that "a private right of action that involves a claim of fraud . . . in contravention of . . . the securities laws may be brought not later than the earlier of (1) 2 years after the discovery of facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b). Therefore, plaintiffs' claims "sounding in [securities] fraud must be filed within the earlier of five years from the alleged violation or two years after discovery of the facts constituting the violation." <u>Charles Schwab Corp. v. Bank of Am. Corp.</u>, 883 F.3d 68, 94 (2d Cir. 2018) (citing 28 U.S.C. § 1658(b)); <u>see also</u> <u>VR Glob. Partners, L.P. v. Petroleos de Venezuela</u>, No. 23 CV 5604, 2024 WL 1514982, at *4 (S.D.N.Y. Apr. 8, 2024)

("Claims brought under § 10(b) of the Exchange Act are subject to a two-year statute of limitations and a five-year statute of repose, whichever is shorter.").[5]

Thus, to ascertain whether plaintiffs' securities fraud claims are timely, it must be determined (1) when plaintiffs can be said to have discovered the facts constituting the alleged violations, and (2) when the violations occurred. See Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank, 924 F. Supp. 2d 528, 534 (S.D.N.Y. 2013). A fact is deemed "discovered" for § 1658(b) purposes at the point at which "a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint." City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 175 (2d Cir. 2011). Moreover, alleged misrepresentations after the purchase of stock "cannot be the basis for a claim under Section 10(b)" unless the statements are made "'in connection with the purchase or sale of any security.'" Integrated Media Res., LLC v. Morley, No. 22 CV 967, 2023 WL 407535, at *1 (2d Cir. Jan. 26, 2023) (quoting 15 U.S.C. § 78j(b)); see also Chadbourne & Parke LLP v. Troice, 571 U.S. 377, 387 (2014) ("A fraudulent misrepresentation or omission is not made in connection with such a purchase or sale of a covered security unless it is material to a decision

---

[5] Ordinarily, a statute of limitations creates a time limit for filing a lawsuit "based on the date when the claim accrued." CTS Corp. v. Waldburger, 573 U.S. 1, 7 (2014) (citation omitted). In contrast, a statute of repose "puts an outer limit on the right to bring a civil action." Id. at 8. That time limit is measured "from the date of the last culpable act or omission of the defendant." Id. (citation omitted). It is "not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." Id. (citation omitted). A statute of repose "begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered" the cause of action. Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 107 (2d Cir. 2013) (citation omitted) (addressing § 13 of the Securities Act). Statutes of repose "are subject only to legislatively created exceptions," and "may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control." CTS Corp., 573 U.S. at 9 (citation omitted).

by one or more individuals (other than the fraudster) to buy or to sell a covered security.") (internal quotation marks omitted); Arnold v. KPMG LLP, 334 F. App'x 349, 351 (2d Cir. 2009) ("Plaintiff's contention that the period of repose begins to run at the time of the last alleged misrepresentation (even when made after the final purchase or sale of the securities) ignores the applicable limitations period, and thus, is devoid of merit.").

Here, plaintiffs allege that, "[b]eginning in or about December 2008, Defendants Daunette Lee and Damon Lee made numerous fraudulent representations to Plaintiffs regarding Defendant Resource Petroleum" related to the work and financial status of Resource Petroleum "for the sole purpose of inducing Plaintiffs to give money to Defendants Daunette Lee and Damon Lee, who represented to Plaintiffs that the money would be invested in Defendant Resource Petroleum." (SAC ¶ 9.) Plaintiffs allege that, shortly after they transferred $27,500 to defendants, the funds were moved to the personal bank account of defendant Daunette Lee. (Id. ¶ 22.) After they made their investments and attended a presentation hosted by defendants in 2009, plaintiffs did not hear from defendants for several years despite making many attempts to locate them. (Id. ¶ 29.)

In October 2011, defendant Resource Petroleum filed Form D with the SEC indicating that from "2004 to 2010 the Issuer issued $50,818,500 in stock to friend and family; and as consideration for obtaining engineering and other services, to obtain a license to construct a [] refinery; acceptable to contractors, and to make the project bankable." (Id. ¶¶ 30, 31.) The form also stated that the minimum investment in Resource Petroleum to be accepted from any outside investor was $5,000,000. (Id. ¶ 32.) The form did not indicate that shares of Resource Petroleum had been sold for $27,500 with a unit price of $2.50 during that period. (Id. ¶ 33.) On March 7, 2012, plaintiff Robinson contacted the SEC and communicated her concerns about her

11

investment in Resource Petroleum.  (Id. ¶ 34; see also Letter from the SEC Office of Investor Education and Advocacy, dated Mar. 14, 2024, attached as Ex. G to the SAC, Dkt. No. 33.) Then, in 2020, plaintiffs contacted the Queens D.A. "regarding their concerns that Defendants had defrauded them." (Id. ¶ 35.)  Plaintiffs allege that after the Queens D.A. investigated defendants, defendant Daunette Lee informed them that she would "restore" plaintiffs' shares of Resource Petroleum and proposed a "fee agreement of $5,000 per month starting 30 August 2021." (Id. ¶¶ 37, 38.)

      According to plaintiffs' allegations, defendants' violations of the Exchange and Securities Acts took place in 2008 and 2009, when plaintiffs transferred $27,500 to defendants in return for units of common stock of Resource Petroleum.  Then, plaintiffs contacted the SEC in March 2012 after they became aware that defendants' Form D contained information that was inconsistent with their investments.  Accordingly, plaintiffs discovered the facts constituting the alleged violations by March 2012 at the latest.  These facts render plaintiffs' claims for violations of the securities laws against defendants, brought in 2022, untimely under both the statute of limitations and statute of repose.  See Charles Schwab Corp., 883 F.3d at 94.  Accordingly, I respectfully recommend that the motion for default judgment related to plaintiffs' claims under the Exchange and Securities Acts be denied.  I further recommend that these claims be dismissed against all defendants.  See City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC, 587 F. Supp. 3d 56, 83 (S.D.N.Y. 2022) ("A claim may be dismissed as untimely under Rule 12(b)(6) if untimeliness is demonstrated on the face of the complaint, by documents integral thereto, and by matters of which a court may take judicial notice."); see also Wright v. Rensselaer Cnty. Jail, 771 F. App'x 58, 59 (2d Cir. 2019) ("While untimeliness is an affirmative defense, a district court can *sua sponte* dismiss untimely claims where the defense is apparent on

the face of the complaint."); Walters v. Indus. & Com. Bank of China, Ltd., 651 F.3d 280, 293 (2d Cir. 2011) (holding that a court may raise statute of limitations *sua sponte* when facts supporting that defense "are set forth in the papers plaintiff himself submitted") (internal quotation marks omitted).[6]

II.   Common Law Fraud

Plaintiffs' third claim for fraud against defendants is brought under New York State common law. "Under New York law, the elements of a common-law fraud claim are (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Romain v. Webster Bank N.A., No. 23 CV 5956, 2024 WL 3303057, at *4 (E.D.N.Y. July 2, 2024) (citing MetLife Invs. USA Ins. Co. v. Zeidman, 734 F. Supp. 2d 304, 312 (E.D.N.Y. 2010)). "Further, allegations of fraud must be pled with particularity under Fed. R. Civ. P. 9(b)." Burton v. Wells Fargo Bank, N.A., No. 23 CV 5520, 2024 WL 3173898, at *13 (E.D.N.Y. June 26, 2024). "To comply with Rule 9(b)'s specificity requirements, 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Id. (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)). "If multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them." Asdourian v. Konstantin, 77 F. Supp. 2d 349, 354 (E.D.N.Y. 1999).

---

[6] Because the issue of timeliness is raised in the first instance in this Report and Recommendation, I respectfully recommend that the court grant plaintiffs thirty days to file any objections to the court's findings.

Under New York law, an "action based on fraud" must be brought within the "greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8); see also Meyer v. Seidel, 89 F.4th 117, 130-31 (2d Cir. 2023). "The inquiry as to whether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was possessed of knowledge of facts from which [the fraud] could be reasonably inferred." Sargiss v. Magarelli, 909 N.E.2d 573, 576 (N.Y. 2009) (citation and internal quotation marks omitted).

In support of their claim for common law fraud, plaintiffs allege that "[b]eginning in December 2008, and continuing to the present day, Defendants Daunette Lee and Damon Lee have made intentional, material, and fraudulent misrepresentations to Plaintiffs regarding the work and financial status of Defendant Resource Petroleum." (SAC ¶ 68.) Furthermore, "[r]elying on Defendants' representations, in 2009 Plaintiffs gave $27,500 to Defendants, with the intention of investing in Resource Petroleum." (Id. ¶ 70.) "Defendants Daunette Lee and Damon Lee intentionally misrepresented to Plaintiffs that the funds Plaintiffs transferred to Wachovia Bank in 2009 were invested in Resource Petroleum. Upon information and belief, the funds that Plaintiffs transferred to Wachovia Bank were not invested in Resource Petroleum but were transferred to the personal bank account of Defendant Daunette Lee." (Id. ¶ 71.) Then, in 2022, defendant Daunette Lee told plaintiff Robinson "your money is safe," knowing that the statement was false. (Id. ¶ 72.)

Although plaintiffs allege that defendants have made false statements to them as recently as 2022, the alleged fraud at issue here occurred in 2008 and 2009 when plaintiffs

14

transferred money to defendants.[7] Moreover, as discussed above, it appears that plaintiffs discovered the alleged fraud in 2012, when defendants filed Form D which contained information that was inconsistent with plaintiffs' investments and plaintiffs reported the inconsistency to the SEC. Therefore, I find that plaintiffs' common law fraud claim is untimely. I respectfully recommend that plaintiffs' motion for default judgment on this claim be denied and that the claim be dismissed.[8]

---

[7] The "continuing violation" doctrine "is usually employed where there is a series of continuing wrongs and [which] serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." Henry v. Bank of Am., 48 N.Y.S.3d 67, 70 (1st Dep't 2017) (citation omitted). However, "where a plaintiff asserts a single breach—with damages increasing as the breach continued—the continuing wrong theory does not apply[.]" Ramiro Aviles v. S & P Glob., Inc., 380 F. Supp. 3d 221, 289 (S.D.N.Y. 2019) (finding that plaintiff's fraud claim was complete at the time of investment) (citation omitted); see also Cupersmith v. Piaker & Lyons P.C., No. 14 CV 1303, 2016 WL 5394712, at *11 (N.D.N.Y. Sept. 27, 2016) ("New York courts have repeatedly refused to apply the continuing violation doctrine to common law fraud-based claims which, like Plaintiffs' claims, accrue at the time of purchase.").

[8] In the alternative, I recommend that the court decline to exercise supplemental jurisdiction over plaintiffs' common law fraud claim. A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). I have recommended that plaintiffs' motion as to the securities law claims be denied because they are untimely. Furthermore, there does not appear to be a basis for an exercise of diversity jurisdiction over the common law claim. Federal diversity jurisdiction exists where plaintiffs and defendants are citizens of different states, and the amount in controversy is greater than $75,000. See 28 U.S.C. § 1332(a). Here, it appears that the parties are citizens of the same state. (See SAC ¶¶ 4-6; see also Answer.) Additionally, plaintiffs seek $27,500 in compensatory damages – the amount transferred to defendants. Plaintiffs also seek punitive damages; however, plaintiffs seeking punitive damages for common law fraud claims must "allege fraud that is founded upon such moral indifference as to be 'aggravated by evil' or to be demonstrative of a criminal indifference to civil obligations." Koch v. Greenberg, 14 F. Supp. 3d 247, 273 (S.D.N.Y. 2014), aff'd, 626 F. App'x 335 (2d Cir. 2015) (quoting Rush v. Oppenheimer & Co., 596 F. Supp. 1529, 1532 (S.D.N.Y. 1984)). Plaintiffs have not so alleged; therefore, the amount in controversy likely falls below the $75,000 threshold required to establish diversity jurisdiction. See, e.g., Allen v. Citigroup Glob. Mkt. Holdings, Inc., No. 21 CV 2387, 2023 WL 2368833, at *5 (S.D.N.Y. Mar. 6, 2023) ("Because the Court dismisses Plaintiff's federal claim and the Court has already found that there is no basis for an exercise of diversity jurisdiction over Plaintiff's common law fraud claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's common law fraud claim."); Jacobson v. Citigroup Glob. Mkt.

(Continued . . .)

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiffs' motion for default judgment be denied. I further recommend that the court dismiss plaintiffs' claims *sua sponte* as untimely and that, in the interest of fairness, plaintiffs be permitted thirty days to file any objections to this Report and Recommendation. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
August 21, 2024

---

Holdings Inc., No. 21 CV 2384, 2022 WL 268792, at *1-2 (S.D.N.Y. Jan. 28, 2022) (dismissing fraud claim where there was no basis for an exercise of diversity jurisdiction); Seagrape Inv'rs LLC v. Tuzman, No. 19 CV 9736, 2020 WL 5751232, at *18 (S.D.N.Y. Sept. 25, 2020) (where dismissing § 10(b) claims, courts in this Circuit have dismissed accompanying fraud claims as well) (collecting cases).